# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL A. LOMBARDO,  :  <br>    Plaintiff,  : <br> : <br>v.  : <br> : <br>OFFICER ANDREW YOST, *et al.*,  : <br>    Defendants.  : | CIVIL ACTION NO. 24-CV-1383 |

## <u>MEMORANDUM</u>

**YOUNGE, J.**                                                                                    **JUNE 12, 2024**

Currently before the Court is the Amended Complaint of *pro se* Plaintiff Michael A. Lombardo, a prisoner currently incarcerated at the Lehigh County Jail. Lombardo alleges that his civil rights were violated during an arrest by the Bethlehem City Police Department. For the following reasons, the Court will dismiss the Amended Complaint. Lombardo will be granted leave to file a second amended complaint in the event he can cure the deficiencies noted by the Court.

**I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

Lombardo commenced this matter alleging federal civil rights violations and state law claims based on his arrest on November 17, 2023. (Compl. at 4-5.)[2] A review of the publicly available state court docket system reveals that Lombardo currently has two active criminal prosecutions relevant to the case at bar. *See Commonwealth v. Lombardo*, CP-39-CR-0000987-

---

[1] The factual allegations set forth in this Memorandum are taken from Lombardo's Amended Complaint (ECF No. 7) and publicly available dockets. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).

[2] The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

2024 (C.P. Lehigh); *Commonwealth v. Lombardo*, CP-39-CR-0000988-2024 (C.P. Lehigh).  In *Commonwealth v. Lombardo*, CP-39-CR-0000987-2024 (C.P. Lehigh), Lombardo was charged with burglary, criminal trespass, criminal mischief, theft by unlawful taking, receiving stolen property, and loitering and prowling at night.  In *Commonwealth v. Lombardo*, CP-39-CR-0000988-2024 (C.P. Lehigh), Lombardo was charged with attempted criminal trespass, loitering and prowling at night, and criminal trespass.  He is awaiting trial in both cases.[3]

In the initial Complaint, Lombardo named as Defendants:  Amy Zanelli, Andrew Yost, Robert L. Nickelson, Thomas Rasich, Matthew Steidel, Christopher Pfancock, and the Bethlehem City Police Department.  According to Lombardo, he attempted to report to police on November 14, 2023, that he had been illegally evicted, assaulted, and kidnapped by his landlord Stephanie Meinhart.  (*Id.* at 4.)  He was told to make the report in person and was unable to do so because he was in New Jersey at the time.  (*Id.*)  Lombardo claims that upon his return to Pennsylvania on November 17, he sought to contact the police again and allegedly was seized and assaulted by Officers Steidel and Pfancock, and other John Doe Officers.  (*Id.* at 4-5.)  Lombardo contended that instead of assisting him, Officers Steidel, Pfancock, and other John Doe Officers assisted Meinhart because she claimed that Lombardo had threatened her on November 9, 2023.  (*Id.* at 5.)  Lombardo also asserts that Meinhart's allegation of a threat had gone unreported to police.  (*Id.*)  According to Lombardo, the officers plotted and conspired with Magistrate Zanelli to assist Meinhart because she is female, and Judge Zanelli entered a Protection From Abuse Order based on Meinhart's prior, unreported accusations against

---

[3] Lombardo also is being prosecuted in connection with an event that occurred on December 8, 2023, for which Lombardo has commenced a separate civil action in this court.  *See Commonwealth v. Lombardo*, CP-39-CR-0000986-2024 (C.P. Lehigh); *Lombardo v. Wescoe*, Civil Action No. 24-1385 (E.D. Pa.).

Lombardo. (*Id.*) Lombardo claimed that he was subjected to an illegal search and seizure in violation of his rights secured by the Fourth Amendment; that certain Defendants committed identity theft; that he was discriminated against on the basis of his gender and his right to equal protection of the law was violated; and that certain Defendants conspired to violate his constitutional rights. (*Id.* at 7-8.)

In an April 23, 2024 Memorandum and Order, the Court granted Lombardo leave to proceed *in forma pauperis*, screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and dismissed his claims. (*See* ECF Nos. 5 and 6.) Lombardo's claims against the Bethlehem City Police Department and Magistrate Zanelli, as well as any claims brought pursuant to 42 U.S.C. § 1981, 42 U.S.C § 1985, and 18 U.S.C. § 2236, were dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. He was not given leave to amend these claims. All other claims were dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Lombardo was given an opportunity to correct the defects in his claims by filing an amended complaint. He filed an Amended Complaint on May 20, 2024. (ECF No. 7.)

In the Amended Complaint, Lombardo names as Defendants: Stephanie Meinhart, Andrew Yost, Matthew Steidel, Christopher Pfancock, and several John Does. Lombardo avers that when he telephoned the Bethlehem City Police Department on November 14, 2023, he was unable to speak with anyone and requested a return call. (Am. Compl. at 9.) When his call was returned by a detective a short time later, Lombardo reported that he was "illegally evicted, assaulted with a weapon, and robbed and possibly kidnapped due to being forcefully removed by landlord brandishing a weapon after being assaulted with the weapon." (*Id.*) Lombardo was told that he must appear in person to file a complaint. (*Id.*) Because he was in New Jersey at the

time, Lombardo indicated that he would appear in person to file criminal charges upon his return to Pennsylvania. (*Id.*) On November 17, Lombardo returned to Pennsylvania and "attempted to contact Bethlehem City Police" but did not "receive a call back, but noticed police vehicles going in . . . [his] direction, the way . . . [he] was heading." (*Id.*) Lombardo alleges that he "was walking on (PRIVATE PROPERTY @ 619 2nd Ave. Bethlehem Pa. 18018) in a (lawful & orderly) manner" and Officer Steidel "entered on the property and immediately grabbed . . . [Lombardo] by the arm & wrist and began asking . . . [his] name while pulling . . . [Lombardo] toward Christopher Pfancock and John Doe Officer #1." (*Id.*) Lombardo alleges the officers surrounded him "in a show of force," grabbed him, performed a *Terry* frisk, and Officer Steidel emptied Lombardo's pockets as Officer Pfancock "kept their hands on . . . [Lombardo's] wrist and shoulder area." (*Id.* at 9-10.) Lombardo alleges that the officers learned his identity from this search. (*Id.* at 10.)

Lombardo claims that the officers had no probable cause, reasonable suspicion, or information that Lombardo had committed, or was engaged in, a crime, and that he was, therefore, subjected to a false arrest and detained. (*Id.*) According to Lombardo, the officers and Bethlehem City Police had no prior information regarding any crime committed by Lombardo and did not even have his description. (*Id.*)

Lombardo further contends that during his arrest and detention, he attempted to inform the officers that he had been assaulted, robbed, and kidnapped by Meinhart. (*Id.*) He asserts that officers were uninterested in assisting him and "ignored me to provide assistance to Stephanie Meinhart." (*Id.*) He alleges: "Christopher Pfancock informed his partner Matthew Steidel & homeowner of the warrantless NCIC check. Stephanie Meinhart became extremely belligerent & unruly screaming 'I want him out of my house! What do I have to do!?'" (*Id.* at 10-11.)

4

Lombardo further contends that Officer Steidel spoke to Meinhart, then Officers Steidel and Pfancock conspired with Meinhart about "[h]ow to get Michael out tonight." (*Id.* at 11.) He also alleges that Defendants Steidel, Pfancock, and Meinhart "conspired to have me removed from my home." (*Id.*)

Lombardo claims that "shortly after," Defendants Steidel, Pfancock, and Meinhart met with Magistrate Zanelli "and furthered the conspiracy during a 'ex parte' hearing magically Magistrate Amy Zanelli found (immediate and present danger) existed when no probable cause existed at the scene." (*Id.*) He avers that "one of the conspirators" provided his identification to Magistrate Zanelli. (*Id.*)

Lombardo also alleges that on the following day, November 18, Officer Andrew Yost responded to a call from two individuals in Bethlehem who provided video to Officer Yost. (*Id.* at 12.) Lombardo asserts that Officer Yost "contacted fellow officer & buddy Matthew Steidel" because the two "Bethlehem City Police Officers are attempting to solve criminal issues in the area and began to conspire." (*Id.*) Lombardo contends that Officer Steidel identified the individual on the video as Lombardo based on his arrest of Lombardo the prior day. (*Id.*) He further alleges that Officer Yost contacted Magistrate Zanelli, such that Officer Yost, Magistrate Zanelli, and Officer Steidel conspired to file false charges against Lombardo. (*Id.*) Lombardo claims that the video does not depict the individual violating any law, but an arrest warrant, nevertheless, was issued. (*Id.*)

## II.  STANDARD OF REVIEW

Because Lombardo has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Amended Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the

same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Lombardo is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "'cannot flout procedural rules — they must abide by the same rules that apply to all other litigants.'" *Id.*

Furthermore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d

99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III. DISCUSSION

Based on his allegations, the Court understands Lombardo to allege the following claims: (1) violations of his Fourth Amendment rights to be free from unlawful search and seizure, as well as false arrest, false imprisonment, and malicious prosecution pursuant to 42 U.S.C. § 1983 (*see* Am. Compl. at 4-6 (Counts 1, 6, 7, 10)); (2) failure to train pursuant to 42 U.S.C. § 1983; (*see* Am. Compl. at 7 (Count 11)); (3) conspiracy pursuant to 42 U.S.C. § 1983 (*see* Am. Compl. at 6 (Count 8);[4] and (4) state law assault and battery claims (*see* Am. Compl. at 5, 6 (Counts 4, 9, 12), as well as claims pursuant to various provisions of the Pennsylvania Crimes Code (*see* Am. Compl. at 4, 5, 7-8 (Counts 2, 3, 5, 13, 14, 15).)[5]  As explained below, Lombardo has failed to allege a plausible claim.

---

[4] Lombardo also alleges a claim for violations of the criminal conspiracy statute, 18 U.S.C. § 241.  (*See* Am. Compl. at 7 (Count 13).)  A private citizen may not initiate criminal prosecution under this statute.  *See Rodriguez v. Salus*, 623 F. App'x 588, 589 n.1 (3d Cir. 2015) (*per curiam*) (finding that the plaintiff's claims attempting to initiate criminal charges under 18 U.S.C. § 241 were properly dismissed because "there is no federal right to require the government to initiate criminal proceedings." (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))).  Accordingly, any claim under 18 U.S.C. § 241 will be dismissed.

[5] Lombardo also indicates generally that the Bethlehem City Police Department and "the above listed officers denied and refused me equal protections of the law." (Am. Compl. at 11.)  Such passing reference is not sufficient to raise a claim under this principle.  *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).  In any event, the Amended Complaint does not provide any factual basis for an equal protection claim, so the Court will not discuss any such claim further.

### A.     Federal Claims

Section 1983, the vehicle by which federal constitutional claims may be brought in federal court, "does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) ("Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors.") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995).[6]  Additionally, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

---

[6] As previously acknowledged by Lombardo, Ms. Meinhart is not a state actor.  Thus, she could not be liable for a constitutional violation on this basis, or by virtue of any alleged "conspiracy."

### 1. Fourth Amendment Claims

The Court understands Lombardo to allege that Officers Steidel and Pfancock, as well as John Does #1 and #2, violated his Fourth Amendment rights when they stopped, searched, and falsely arrested him. (*See* Am. Compl. at 4-6 (Counts 1, 6, 7, 10).) The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As indicated by this language, "the underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985). For a seizure to be reasonable, the Fourth Amendment requires that the seizure be "effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002).

In *Terry v. Ohio*, 392 U.S. 1 (1968), however, the United States Supreme Court recognized an exception to the warrant requirement, permitting police officers with "reasonable, articulable suspicion" of possible criminal activity to conduct an investigatory stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, and only a minimal level of objective justification is necessary for a *Terry* stop." *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (citations and internal quotation marks omitted). Further, the reasonable suspicion standard considers "the totality of the circumstances" faced by the officer and an officer's "reasonable mistake of fact does not violate the Fourth Amendment." *Id.* at 397-398 (citations and internal quotation marks omitted).

To determine whether an investigatory stop was executed within the bounds of the Fourth Amendment, the Supreme Court prescribed a dual inquiry into "whether the officer's action was justified at its inception," in that it was supported by reasonable suspicion, and "whether the manner in which the stop was conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20; *see United States v. Johnson*, 592 F.3d 442, 452 (3d Cir. 2010). A lawful stop and frisk under *Terry* is a seizure that may elevate into a *de facto* arrest, depending on "the reasonableness of the intrusion." *United States v. Edwards*, 53 F.3d 616, 619-20 (3d Cir. 1995). Only if the *Terry* stop escalates into an arrest must the seizure be justified under a higher probable cause standard. *United States v. Sharpe*, 470 U.S. 675, 684 (1985). "[W]hen police officers make an investigative stop, they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo'" during the course of the stop. *Edwards*, 53 F.3d at 619 (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). Thus, where they have a reasonable suspicion, officers may frisk, handcuff, and detain a suspect while conducting their investigation. *See, e.g., United States v. Benitez*, 328 F. App'x 823, 824 (3d Cir. 2009) ("A police officer may also frisk a temporarily detained person if — in addition — they have a reasonable belief that the person is armed and dangerous." (citing *Terry*)).

The elements of a § 1983 claim for unreasonable search and seizure are: (1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597-99 (1989). Although searches generally require probable cause or, at least, reasonable suspicion, there are exceptions including one that permits

an arresting officer to perform a search incident to an arrest. *See generally Birchfield v. North Dakota*, 579 U.S. 438, 455-61 (2016) (discussing the search-incident-to-arrest doctrine).

False arrest and false imprisonment are "nearly identical claims" that are generally analyzed together. *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005). To state a section 1983 claim for false arrest or false imprisonment, the plaintiff must allege: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted); *see also Noviho v. Lancaster Cnty.*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest." (citation omitted)). Therefore, Lombardo must allege facts sufficient to support a reasonable inference that Officers Steidel, Pfancock, and John Doe #1 acted without probable cause.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citation omitted). Courts "consider the existence of probable cause via a 'common sense approach' based on the totality of the circumstances, and viewed from the perspective of an objectively reasonable police officer." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (internal citation omitted). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the

11

arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)).

Construing the Amended Complaint liberally, it is possible that Lombardo also seeks to present a Fourth Amendment malicious prosecution claim. A plaintiff asserting a constitutional malicious prosecution claim must allege facts showing that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). "Probable cause exists [for purposes of a malicious prosecution claim] if there is a fair probability that the person committed the crime at issue." *Harvard*, 973 F.3d at 199 (internal quotations omitted). "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022).

Lombardo's Fourth Amendment claims are conclusory and undeveloped as pled. He claims that on November 17, 2023, as he was walking on private property, Officer Steidel grabbed him by the arm and asked his name, while pulling him toward Officer Pfancock and John Doe #1. (Am. Compl. at 9.) He further claims that he was surrounded in a show of force, Officer Steidel conducted a *Terry* frisk, emptied Lombardo's pockets, and learned his identity. (*Id.* at 9-10.) Lombardo asserts that the officers had no probable cause, reasonable suspicion, or information that Lombardo had engaged in any crime. (*Id.* at 10.) Lombardo further avers that he was commanded not to move and was subjected to a false arrest. (*Id.*) According to

12

Lombardo, he attempted to inform the officers that he had been assaulted, robbed, and kidnapped by Meinhart, to no avail. (*Id.*) As alleged, the officers performed a warrantless NCIC check and then met with Magistrate Zanelli who deemed Lombard an immediate and present danger to Meinhart. (*Id.* at 11.)

Lombardo's allegations do not sufficiently describe the circumstances leading up to the stop, search, and seizure to support an inference that the Defendants' actions were unconstitutional. *See, e.g., Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023) ("To properly analyze a claim asserting an illegal search and seizure under the Fourth Amendment, [the plaintiff] must plead the circumstances under which the search arose." (citation omitted)), *aff'd sub nom. Medina v. Allentown Police Dep't*, No. 23-2055, 2023 WL 7381461 (3d Cir. Nov. 8, 2023). While Lombardo clearly seeks to present claims based on alleged violations of his Fourth Amendment rights in connection with this incident, he does not include sufficient factual allegations about the stop, search, and arrest to support an inference that the Defendants' actions were unconstitutional. For instance, Lombardo alleges that he was walking on private property when he was stopped. (*See* Am. Compl. at 9.) However, his allegations suggest that he was on Meinhart's property. (*See id.* at 10-11 ("Christopher Pfancock informed his partner Matthew Steidel & homeowner of the warrantless NCIC check. Stephanie Meinhart became extremely belligerent & unruly screaming 'I want him out of my house! What do I have to do!?'"). At the same time, he also refers to the location as his home. (*See id.* at 11 (alleging that Defendants Steidel, Pfancock, and Meinhart "conspired to have me removed from my home.").) It is unclear then, based on the confusing nature of the facts alleged, why police lacked any reasonable suspicion to stop Lombardo at that time and/or arrest him. That is especially so since it is unclear what he was charged with based on this incident given the two

13

prosecutions against him and, accordingly, whether probable cause existed for those charges. Thus, he has not adequately alleged the details about what he was arrested for, or the circumstances surrounding his arrest. Without these details, the court is unable to discern whether Lombardo can plausibly state a Fourth Amendment claim. *See, e.g., Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to the extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting [defendant] lacked probable cause to believe he had committed the offense for which he was arrested"); *Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims because plaintiff failed to assert plausible claim of lack of probable cause where plaintiff, while alleging he was twice arrested, did not have drugs in his possession, did not break the law, and police confiscated his property, "assert[ed] no other facts that would shed light on the circumstances under which he was arrested, on what the officers knew or should have known at the time of the arrest, or on any other factor that might have a bearing on the claims he attempts to raise"); *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all allegations against them in the underlying criminal proceedings were false).[7] Accordingly, Lombardo's Fourth Amendment claims based on an

---

[7] Moreover, any malicious prosecution claims necessarily fail as premature because Maldonado's state court criminal proceedings have not terminated, much less terminated in his favor.

alleged unreasonable search and seizure, as well as his claims for false arrest, false imprisonment, and malicious prosecution will be dismissed.[8]

### 2. Failure to Train

Lombardo attempts to raise a failure to train claim against Defendants Steidel, Pfancock and John Does 1 and 2. (*See* Am. Compl. at 7 (Count 11).) "A supervising authority may be liable under § 1983 for failing to train . . . when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact." *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cr. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can

---

[8] Lombardo should note that if he files a second amended complaint raising nonconclusory Fourth Amendment claims relating to the search, seizure, and/or arrest and imprisonment, such claims may be subject to dismissal or stay in accordance with the doctrine of abstention developed in *Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, there is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). The specific elements of *Younger* abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989); *see, e.g., Rex v. Fisher*, No. 12-4045, 2012 WL 3537846, at *2 (E.D. Pa. Aug. 15, 2012) (staying false arrest and illegal search claims for damages in light of pending criminal prosecution when plaintiff "ha[d] the opportunity to raise his Fourth Amendment challenges in the course of his criminal proceeding"). However, because Lombardo's Fourth Amendment claims are undeveloped as pled here, and therefore not plausible, the Court will not address at this time whether *Younger* abstention necessitates that such claims be stayed pending resolution of the state judicial proceedings.

fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91.[9]

Lombardo has not plausibly alleged that any named Defendant holds a supervisory role, much less plausibly pled any of the elements of this claim. Accordingly, Lombardo's failure to train claim will be dismissed.[10]

---

[9] There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Failure to" claims, such as a failure to train, failure to discipline, or a failure to supervise are generally considered a subcategory of policy or practice liability. *Id.* at 316-17.

[10] Additionally, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *see Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 274 (E.D. Pa. 2022) (finding plaintiff, who only alleged that supervisor-defendant was a Lieutenant in the Special Investigations Unit and that other defendants reported to him, failed to support a plausible claim for supervisory liability); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler

### 3. Conspiracy

Lombardo asserts a conspiracy claim pursuant to § 1983 against Officers Steidel and Pfancock, as well as John Does #1 and #2. (*See* Am. Compl. at 6 (Count 8).) The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Throughout the Amended Complaint, Lombardo asserts that the various named Defendants, along with Magistrate Judge Zanelli, conspired to violate his rights. However, other than referring to various conspiracies among the Defendants, Lombardo does not plausibly allege any facts to support his assertions. He does not cite to any specific factual allegations to support his claim that any conspiracy existed, much less that any Defendants conspired to deprive him of his constitutional rights. Lombardo simply has not alleged any factual basis from which a conspiracy could plausibly be inferred. *See Mir v. Brod*, No. 22-3273, 2024 WL 1877024, at *1

---

terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").

(3d Cir. Apr. 30, 2024) (affirming dismissal of conspiracy claim where plaintiff merely alleged conclusory allegations of "some sweeping conspiracy"). Accordingly, Lombardo's § 1983 conspiracy claim will be dismissed.

### B.    State Law Claims

To the extent Lombardo seeks to assert claims under state tort law, he has not pled an independent basis for the Court's jurisdiction over those claims.[11] District courts may exercise jurisdiction over cases raising claims exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which means that "unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co.*, 800 F.3d at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp.*, 547 U.S. at 342 n.3)).

---

[11] Because the Court has dismissed Lombardo's federal claims, the Court will not exercise supplemental jurisdiction over any state law claims.

Lombardo does not plead the citizenship of any party to this suit, but provides Pennsylvania addresses for each. (*See* Am. Compl. at 2.) Since the Amended Complaint fails to allege a basis for diversity jurisdiction, any state law tort claims will be dismissed without prejudice for lack of jurisdiction.[12]

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Lombardo leave to proceed *in forma pauperis* and dismiss his Amended Complaint. Lombardo's § 1983 claims, as well as any claim under 18 U.S.C. § 241, will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Any state law claims will be dismissed for lack of subject matter jurisdiction.

Lombardo will be given an opportunity to correct the defects in his claims by filing a second amended complaint. Any second amended complaint must clearly describe the factual basis for his claims and how the defendant was personally involved in the alleged denial of his rights. Lombardo may not reassert a claim that has already been dismissed with prejudice, or rename a party that has already been terminated from this case.

An appropriate Order follows, which provides further instruction about amendment.

                              **BY THE COURT:**

                              **/s/ John Milton Younge**
                              **JOHN MILTON YOUNGE, J.**

---

[12] In the Amended Complaint, Lombardo lists claims pursuant to various provisions of the Pennsylvania Crimes Code. *See supra.* To the extent that Lombardo seeks to initiate state criminal charges against any Defendant, the Court has no authority to order such relief. *See Kent v. Ed Carber Inc.*, 467 F. App'x 112, 113 (3d Cir. 2012) (*per curiam*) (affirming dismissal of claims seeking initiation of criminal charges because "a private person does not have a 'judicially cognizable interest in the prosecution . . . of another'") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).