IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL A. LOMBARDO, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-1383 |
| | : | |
| OFFICER ANDREW YOST, *et al.*, | : | |
|     Defendants. | : | |

<u>MEMORANDUM</u>

YOUNGE, J.                                                                 JULY 11, 2024

Currently before the Court is the Second Amended Complaint ("SAC") of *pro se* Plaintiff

Michael A. Lombardo, a prisoner incarcerated at the Lehigh County Jail.  Lombardo alleges that

his civil rights were violated when he was stopped and searched by officers of the Bethlehem

City Police Department.  For the following reasons, the Court will dismiss the SAC with

prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.      **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

Lombardo commenced this matter alleging federal civil rights violations and state law

claims based on an incident on November 17, 2023.  (Compl. at 4-5.)[2]  In the initial Complaint,

---

[1] The factual allegations set forth in this Memorandum are taken from Lombardo's SAC (ECF No. 12) and publicly available dockets.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

[2] A review of the publicly available state court docket system reveals that Lombardo currently has two active criminal prosecutions that appear to be relevant to the case at bar.  *See Commonwealth v. Lombardo*, CP-39-CR-0000987-2024 (C.P. Lehigh); *Commonwealth v. Lombardo*, CP-39-CR-0000988-2024 (C.P. Lehigh).  In *Commonwealth v. Lombardo*, CP-39-CR-0000987-2024 (C.P. Lehigh), Lombardo was charged with burglary, criminal trespass, criminal mischief, theft by unlawful taking, receiving stolen property, and loitering and prowling at night.  In *Commonwealth v. Lombardo*, CP-39-CR-0000988-2024 (C.P. Lehigh), Lombardo

Lombardo named as Defendants:  Amy Zanelli, Andrew Yost, Robert L. Nickelson, Thomas Rasich, Matthew Steidel, Christopher Pfancock, and the Bethlehem City Police Department. According to Lombardo, he attempted to report to police on November 14, 2023, that he had been illegally evicted, assaulted, and kidnapped by his landlord Stephanie Meinhart.  (Compl. at 4.)  He was told to make the report in person and was unable to do so because he was in New Jersey at the time.  (*Id.*)  Lombardo claimed that upon his return to Pennsylvania on November 17, he sought to contact the police again and allegedly was seized and assaulted by Officers Steidel and Pfancock, and other John Doe Officers.  (*Id.* at 4-5.)  Lombardo contended that instead of assisting him, Officers Steidel, Pfancock, and other John Doe Officers assisted Meinhart because she claimed that Lombardo had threatened her on November 9, 2023.  (*Id.* at 5.)  Lombardo also asserted that Meinhart had not previously reported these threats to police. (*Id.*)  According to Lombardo, the officers plotted and conspired with Magistrate Zanelli to assist Meinhart because she is female, and Judge Zanelli entered a Protection From Abuse Order based on Meinhart's prior, unreported accusations against Lombardo.  (*Id.*)  Lombardo claimed that he was subjected to an illegal search and seizure in violation of his rights secured by the Fourth Amendment; that certain Defendants committed identity theft; that he was discriminated against on the basis of his gender and his right to equal protection of the law was violated; and that certain Defendants conspired to violate his constitutional rights.  (*Id.* at 7-8.)

In an April 23, 2024 Memorandum and Order, the Court granted Lombardo leave to proceed *in forma pauperis*, screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and dismissed his claims.  (*See* ECF Nos. 5 and 6.)  Lombardo's claims against the Bethlehem City

---

was charged with attempted criminal trespass, loitering and prowling at night, and criminal trespass.  He is awaiting trial in both cases.

Police Department and Magistrate Zanelli, as well as claims brought pursuant to 42 U.S.C. §

1981, 42 U.S.C § 1985, and 18 U.S.C. § 2236, were dismissed with prejudice pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  He was not given leave to amend these

claims.  All other claims were dismissed without prejudice pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii) for failure to state a claim.  Lombardo was given an opportunity to correct the

defects in his claims by filing an amended complaint.  He filed an Amended Complaint on May

20, 2024.  (ECF No. 7.)

     In the Amended Complaint, Lombardo named as Defendants:  Stephanie Meinhart,

Andrew Yost, Matthew Steidel, Christopher Pfancock, and several John Does.  Lombardo

averred that when he telephoned the Bethlehem City Police Department on November 14, 2023,

he was unable to speak with anyone and requested a return call.  (Am. Compl. at 9.)  When his

call was returned, Lombardo reported that he was "illegally evicted, assaulted with a weapon,

and robbed and possibly kidnapped due to being forcefully removed by landlord brandishing a

weapon after being assaulted with the weapon."  (*Id.*)  Lombardo was told that he must appear in

person to file a complaint.  (*Id.*)  Because he was in New Jersey at the time, Lombardo decided

that he would appear in person to file criminal charges upon his return to Pennsylvania.  (*Id.*)  On

November 17, Lombardo returned to Pennsylvania and "attempted to contact Bethlehem City

Police"; he did not "receive a call back, but noticed police vehicles going in . . . [his] direction,

the way . . . [he] was heading."  (*Id.*)  Lombardo alleged that he "was walking on (PRIVATE

PROPERTY @ 619 2nd Ave. Bethlehem Pa. 18018) in a (lawful & orderly) manner" and Officer

Steidel "entered on the property and immediately grabbed . . . [Lombardo] by the arm & wrist

and began asking . . . [his] name while pulling . . . [Lombardo] toward Christopher Pfancock and

John Doe Officer #1."  (*Id.*)  Lombardo alleged the officers surrounded him "in a show of force,"

grabbed him, performed a *Terry* frisk, and Officer Steidel emptied Lombardo's pockets as Officer Pfancock "kept their hands on . . . [Lombardo's] wrist and shoulder area."  (*Id.* at 9-10.) Lombardo alleged that the officers learned his identity from this search.  (*Id.* at 10.)

Lombardo claimed that the officers had no probable cause, reasonable suspicion, or information that Lombardo had committed, or was engaged in, a crime, and that he was, therefore, subjected to a false arrest and detained.  (*Id.*)  According to Lombardo, the officers and Bethlehem City Police had no prior information regarding any crime committed by Lombardo and did not even have his description.  (*Id.*)

Lombardo further contended that during his detention, he attempted to inform the officers that he had been assaulted, robbed, and kidnapped by Meinhart.  (*Id.*)  He asserted that officers were uninterested in assisting him and "ignored me to provide assistance to Stephanie Meinhart." (*Id.*)  He alleged:  "Christopher Pfancock informed his partner Matthew Steidel & homeowner of the warrantless NCIC check.  Stephanie Meinhart became extremely belligerent & unruly screaming 'I want him out of my house! What do I have to do!?'"  (*Id.* at 10-11.)  Lombardo further contended that Officer Steidel spoke to Meinhart, then Officers Steidel and Pfancock conspired with Meinhart about "[h]ow to get Michael out tonight."  (*Id.* at 11.)  He also alleged that Defendants Steidel, Pfancock, and Meinhart "conspired to have me removed from my home."  (*Id.*)

Lombardo claimed that "shortly after," Defendants Steidel, Pfancock, and Meinhart met with Magistrate Zanelli "and furthered the conspiracy during a 'ex parte' hearing magically Magistrate Amy Zanelli found (immediate and present danger) existed when no probable cause existed at the scene."  (*Id.*)  He averred that "one of the conspirators" provided his identification to Magistrate Zanelli.  (*Id.*)

Lombardo also alleged that on the following day, November 18, Officer Andrew Yost responded to a call from two individuals in Bethlehem who provided video to Officer Yost.  (*Id.* at 12.)  Lombardo asserted that Officer Yost "contacted fellow officer & buddy Matthew Steidel" because the two "Bethlehem City Police Officers are attempting to solve criminal issues in the area and began to conspire."  (*Id.*)  Lombardo contended that Officer Steidel identified the individual on the video as Lombardo based on his arrest of Lombardo the prior day.  (*Id.*)  He further alleged that Officer Yost contacted Magistrate Zanelli, such that Officer Yost, Magistrate Zanelli, and Officer Steidel conspired to file false charges against Lombardo.  (*Id.*)  Lombardo claimed that the video does not depict the individual violating any law, but an arrest warrant, nevertheless, was issued.  (*Id.*)

By Memorandum and Order dated June 12, 2024, the Court screened the Amended Complaint pursuant to § 1915(e)(2)(B), dismissed Lombardo's claims, and granted him leave to file a second amended complaint.  (ECF Nos. 9, 10.)  The Court construed the Amended Complaint as presenting the following claims:  (1) violations of Lombardo's Fourth Amendment rights to be free from unlawful search and seizure, as well as false arrest, false imprisonment, and malicious prosecution pursuant to 42 U.S.C. § 1983 (*see* Am. Compl. at 4-6 (Counts 1, 6, 7, 10)); (2) failure to train pursuant to 42 U.S.C. § 1983; (*see* Am. Compl. at 7 (Count 11)); (3) conspiracy pursuant to 42 U.S.C. § 1983 (*see* Am. Compl. at 6 (Count 8); and (4) state law assault and battery claims (*see* Am. Compl. at 5, 6 (Counts 4, 9, 12), as well as claims pursuant to various provisions of the Pennsylvania Crimes Code (*see* Am. Compl. at 4, 5, 7-8 (Counts 2, 3, 5, 13, 14, 15).)[3]

---

[3] The Court also determined that to the extent Lombardo sought to present a claim under 18 U.S.C. § 241, (*see* Am. Compl. at 7 (Count 13)), such claim was dismissed because a private citizen may not initiate criminal prosecution under this statute.  (ECF No. 9 at 7 n.4 (citing

The Court determined that Lombardo had failed to plead a plausible Fourth Amendment claim based on allegations of unreasonable search and seizure, including a *Terry* stop and frisk, allegations of false arrest and false imprisonment, and allegations of malicious prosecution. (*See* ECF No. 9 at 9-13.)  Lombardo's allegations were conclusory and undeveloped as pled because he did not sufficiently describe the circumstances leading up to the stop, search, and seizure to support an inference that the Defendants' actions were unconstitutional. (*Id.* at 13-15.) Lombardo's failure to train claim also was dismissed as not plausible. (*Id.* at 15-16.) Lombardo's § 1983 conspiracy claim again was dismissed because Lombardo did not plausibly allege any facts to support his assertion that Defendants had conspired. (*Id.* at 17.)  To the extent he asserted state law tort claims, these claims were dismissed for lack of subject matter jurisdiction. (*Id.* at 18-19.)  Lombardo was given an additional opportunity to correct the defects in his claims by filing a second amended complaint. (*Id.* at 19.)  He was instructed, *inter alia*, that any second amended complaint must clearly describe the factual basis for his claims and how the defendant was personally involved in the alleged denial of his rights. (*Id.*)  Lombardo filed the SAC on June 24, 2024. (ECF No. 12.)

Lombardo now names as Defendants Stephanie Meinhart, Elizabeth Ann Ballard, James Reece Scifer, and Bethlehem City Police Officers Christopher Pfancock, Matthew Steidel, and Andrew Yost. (SAC at. 2.)  Lombardo summarizes his present claims as follows:  on November 17, 2023, he was unlawfully seized, searched, and restrained "without a crime being committed," and as a result, his "First Amendment right to privacy was violated," his Fourth Amendment rights were violated, he was "unlawfully moved approximately 60 feet from 619 2nd Ave. to 623

---

*Rodriguez v. Salus*, 623 F. App'x 588, 589 n.1 (3d Cir. 2015) (*per curiam*).)  Additionally, the Court determined that Lombardo's passing reference to "equal protections of the law" was insufficient to allege a plausible claim. (*Id.* at 7 n.5.)

2nd Ave," and the Magistrate Judge who issued a Protection From Abuse order relied upon judicial immunity to "conceal or blanket the unlawful and unconstitutional" acts.  (*See id.* at 4.)

As pled in the SAC, Lombardo was walking down the street in Bethlehem, Pennsylvania on November 17, 2023, when he noticed two police vehicles and believed that he "could approach them for assistance" because he previously called the Bethlehem Police Department on November 14 regarding an "illegal eviction and related crimes."  (*Id.* at 5.)  "[W]hile approaching through the grocer's alley on 619 2nd Ave, halfway down (approx. 25 ft)" he "was met by 2 uniformed officers," Officers Pfancock and Steidel.  (*Id.*)  Lombardo claims that Officer Pfancock approached him in the grocer's alley and "forceabley [sic] detained" him, ignored Lombardo's questions, and pulled Lombardo by the wrist and arm to 623 2nd Avenue.  (*Id.*)  He asserts that Officer Pfancock conducted a *Terry* frisk as Officer Steidel and two unnamed officers held his shoulder and also frisked him, emptied his pockets, and obtained his identity.  (*Id.*)  Lombardo contends that the officers had "no reasonable cause to suspect [him] of concealing a weapon or that [he] was involved in, or about to commit, a crime."  (*Id.*)  Lombardo appears to allege that, during this interaction with the officers, he attempted to seek assistance from them regarding his earlier November 14 call to police, but they "granted [his] voice no heed."  (*Id.* at 6.)  He asserts that the officers ran his identity through "NCIC/PENNDOT" which did not list any active warrants and listed his address as 627 2nd Avenue in Bethlehem.  (*Id.*)

As alleged, "[d]uring this entire event, [his] current landlord/owner Stephanie Meinhart was present and speaking to" Officers Pfancock and Steidel "from her front porch," as Lombardo was ordered to "stay – don't move" and to "be quiet."  (*Id.*)  Lombardo assumes that Meinhart also placed a call to police.  (*Id.*)  After approximately forty minutes, Lombardo was told that he could leave.  (*Id.*)

At that point, Meinhart "became belligerent and unruly and extremely disappointed and agitated and exclaimed 'I told you I want him out of my house.  Now what do I have to do?!!'" (*Id.*)  Lombardo claims that Meinhart and the officers "began to conspire further" and "began speaking in hushed tones."  (*Id.*)  Lombardo alleges that Officer Steidel stated, "I already told you how to get him out, we can't do anything; you said he had warrants (he doesn't) we can't do anything, he didn't do anything wrong."  (*Id.*)  After Officer Steidel "provide[d] some information," he and Officer Pfancock left and returned approximately fifteen minutes later "due to Stephanie calling and requiring further instructions."  (*Id.* at 6-7.)  Lombardo further alleges that Officers Pfancock and Steidel left at that point, as did Meinhart, but the three returned twenty-five minutes later with a signed "temporary protection from abuse order" to "assist in evicting" Lombardo.  (*Id.* at 7.)  Lombardo asserts that the order was unwarranted and he was directed to leave 627 2nd Avenue at that time.  (*Id.*)

Lombardo alleges that after he was ordered to leave, Officer Yost responded to a call from Defendants Ballard and Scifers who informed Yost that an "unknown male suspect had attempted to gain entry to their residence through their door and windows."  (*Id.*)  Lombardo contends that Defendants Ballard and Scifers provided Officer Yost with "a home video recorded from inside their home facing the outside" and never informed an "unsuspecting individual he was being recorded."  (*Id.*)  Lombardo claims that Officer Yost provided the video to Officer Steidel who made a "positive identification."  (*Id.* at 7-8.)  According to Lombardo, there was no eyewitness identification and the video recording was unconstitutional; therefore, his identification was unconstitutional and unlawfully obtained.  (*Id.* at 8.)[4]  He further claims that

---

[4] Lombardo attached to the SAC an Affidavit of Probable Cause dated November 19, 2023.  (*See* SAC at 10-12.)  The Affidavit, which was prepared by Officer Yost and lists Lombardo as the defendant in that matter, reflects that Officer Yost responded to the home of Defendants Ballard

Officer Steidel originally obtained his identification during an illegal *Terry* frisk, thus all "identifications made by the officers" were unconstitutional and assassinate his character.  (*Id.*)  Lombardo seeks injunctive relief, declaratory relief, and damages.  (*Id.* at 9.)

## II.  STANDARD OF REVIEW

Because Lombardo has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the SAC if, among other things, it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"

---

and Scifers for a report of an attempted break-in of an occupied residence at 1:30 a.m. on November 18, 2023.  (*Id.* at 10.)  Yost represents in the Affidavit that Ballard and Scifers provided him with surveillance video of the break-in being committed by Lombardo, who attempted to enter the residence through the rear door and several windows.  (*Id.* at 11.)  The suspect was shown in the video "to be a white male with longer hair in a bun, he has a beard with mustache, he has tattoo's on his arms, he is wearing a metal chain necklace, he is also wearing a red shirt with printing on the front, blue jeans, and white/gray shoes."  (*Id.*)  The Affidavit further reflects that Officer Steidel informed Officer Yost that Steidel evicted Lombardo from 627 2nd Avenue, Bethlehem on November 17, 2023, at approximately 5:37 p.m. because Lombardo was listed as the defendant in an emergency Protection From Abuse order.  (*Id.*)  The Affidavit also indicates that Officer Steidel informed Officer Yost that Lombardo was wearing the same clothing as depicted in the surveillance video, and was observed to be a white male with a beard and mustache, with tattoos on his arms, and long hair.  (*Id.*)  Based on the foregoing, Officer Yost, as affiant, requested that Lombardo be charged via an arrest warrant with criminal trespass, as well as loitering and prowling at night.  (*Id.*)

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Lombardo is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "'cannot flout procedural rules — they must abide by the same rules that apply to all other litigants.'"  *Id.; see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and "apply the applicable law, irrespective of whether the pro se litigant mentioned it be name," *Higgns v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Furthermore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## III.   DISCUSSION

Lombardo includes in the SAC a list of claims he seeks to present:  (1) violation of Electronic Communications Privacy Act; (2) 18 U.S.C. § 2701; (3) First Amendment "violations invasion of privacy"; (4) First Amendment "right to privacy"; (5) willful misconduct; (6) unlawful search and seizure; (7) unlawful *Terry* stop; (8) unlawful *Terry* frisk; (9) unlawful restraint; (10) assault and battery; (11) civil conspiracy; (12) due process; (13) equal protection. (*See* SAC at 3.)  Based on his allegations, the Court understands Lombardo primarily to allege Fourth Amendment claims against Officers Pfancock and Steidel, and claims against Defendants Ballard and Scifers based on home security video.  The Court will first address these claims before turning to Lombardo's claims against Defendants Meinhart and Yost.  As explained below, Lombardo has failed to allege a plausible claim against any named Defendant.

### A.   Fourth Amendment Claims Against Officers Pfancock and Steidel

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted).

The Court understands Lombardo to allege that Officers Pfancock and Steidel, and perhaps John Doe Officers, violated his Fourth Amendment rights when they stopped, searched,

and detained him.  (*See* SAC at 5-7.)[5]  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  As indicated by this language, "the underlying command of the Fourth Amendment is always that searches and seizures be reasonable."  *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985).  For a seizure to be reasonable, the Fourth Amendment requires that the seizure be "effectuated with a warrant based on probable cause."  *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002).

In *Terry v. Ohio*, 392 U.S. 1 (1968), however, the United States Supreme Court recognized an exception to the warrant requirement, permitting police officers with "reasonable, articulable suspicion" of possible criminal activity to conduct an investigatory stop.  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  "Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, and only a minimal level of objective justification is necessary for a *Terry* stop."  *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (citations and internal quotation marks omitted).  Further, the reasonable suspicion standard considers "the totality of the circumstances" faced by the officer and an officer's "reasonable mistake of fact does not violate the Fourth Amendment."  *Id.* at 397-398 (citations and internal quotation marks omitted).

---

[5] It appears from the allegations of the SAC that Lombardo was not arrested and taken into custody at the time he was stopped and searched by Officers Pfancock and Steidel.  The Court does not understand Lombardo to raise claims of false arrest, false imprisonment, or malicious prosecution in the SAC.  (*See* SAC at 4-7.)

To determine whether an investigatory stop was executed within the bounds of the Fourth Amendment, the Supreme Court prescribed a dual inquiry into "whether the officer's action was justified at its inception," in that it was supported by reasonable suspicion, and "whether the manner in which the stop was conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20; *see United States v. Johnson*, 592 F.3d 442, 452 (3d Cir. 2010). A lawful stop and frisk under *Terry* is a seizure that may elevate into a *de facto* arrest, depending on "the reasonableness of the intrusion." *United States v. Edwards*, 53 F.3d 616, 619-20 (3d Cir. 1995). Only if the *Terry* stop escalates into an arrest must the seizure be justified under a higher probable cause standard. *United States v. Sharpe*, 470 U.S. 675, 684 (1985). "[W]hen police officers make an investigative stop, they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo'" during the course of the stop. *Edwards*, 53 F.3d at 619 (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). Thus, where they have a reasonable suspicion, officers may frisk, handcuff, and detain a suspect while conducting their investigation. *See, e.g., United States v. Benitez*, 328 F. App'x 823, 824 (3d Cir. 2009) ("A police officer may also frisk a temporarily detained person if — in addition — they have a reasonable belief that the person is armed and dangerous." (citing *Terry*, 392 U.S. at 27)).

The elements of a § 1983 claim for unreasonable search and seizure are: (1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597-99 (1989). Although searches generally require probable cause or, at least, reasonable suspicion, there are exceptions including one that permits

an arresting officer to perform a search incident to an arrest.  *See generally Birchfield v. North Dakota*, 579 U.S. 438, 455-61 (2016) (discussing the search-incident-to-arrest doctrine).

Lombardo's Fourth Amendment claims are not plausible.  In the SAC, Lombardo claims that as he walked down the street on November 17, he noticed two police vehicles and believed that he "could approach them for assistance" regarding his "illegal eviction and related crimes." (SAC at 5.)  Lombardo alleges that Officer Pfancock approached him in the grocer's alley, "forceably detained" him, ignored Lombardo's questions, and pulled Lombardo by the wrist and arm to 623 2nd Avenue.  (*Id.*)  He further asserts that Officer Pfancock conducted a *Terry* frisk as Officer Steidel and two unnamed officers held his shoulder and also frisked him, emptied his pockets, and obtained his identity.  (*Id.*)  Lombardo claims that the officers had "no reasonable cause to suspect [him] of concealing a weapon or that [he] was involved in, or about to commit, a crime."  (*Id.*)  He also asserts that the officers ran his identity through "NCIC/PENNDOT" which did not list any active warrants.  (*Id.* at 6.)

However, Lombardo also alleges that "[d]uring this entire event, [his] current landlord/owner Stephanie Meinhart was present and speaking to" Officers Pfancock and Steidel "from her front porch."  (*Id.*)  Lombardo "assume[s]" that Meinhart also placed a call to police after his initial call to the Bethlehem Police Department.  (*Id.*)  He alleges that Meinhart became belligerent after Lombardo was told that he could leave and asked the officers how to have Lombardo removed from her home.  (*Id.*)  According to Lombardo, when Officer Steidel responded to Meinhart, he indicated that Meinhart had told the officers that Lombardo had outstanding warrants.  (*See id*. at 6 (alleging that Officer Steidel stated: "I already told you how to get him out, we can't do anything; you said he had warrants (he doesn't) we can't do anything, he didn't do anything wrong.").)  As alleged, Officers Pfancock and Steidel and Meinhart left

and returned sometime later with a Protection From Abuse order against Lombardo and he was directed to leave 627 2nd Avenue.  (*Id.* at 6-7.)

The facts alleged by Lombardo do not support a reasonable inference that Officers Pfancock and Steidel violated his constitutional rights when stopping, searching, and detaining him.  Lombardo alleges that Meinhart was present during the entirety of his initial interaction with Officers Pfancock and Steidel, that Meinhart had placed an earlier call to police, and that the officers had been told by Meinhart that Lombardo had outstanding warrants.  In the initial Complaint, Lombardo alleged that instead of assisting him, Officers Steidel, Pfancock, and other John Doe Officers assisted Meinhart because she claimed that Lombardo had threatened her on November 9, 2023.  (*See* Compl. at 5.)

Lombardo must allege sufficient facts to support his claims, *Mala*, 704 F.3d at 245, and he has not done so here.  He merely presents conclusory assertions that the officers lacked reasonable suspicion to stop, search, and detain him during their investigation.  "[I]t is not enough for a plaintiff to offer only conclusory allegations or a simple recital of the elements of a claim."  *Baker v. Wittevrongel*, No. 22-1088, 2023 WL 1069707, at *2 (3d Cir. Jan. 27, 2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Indeed, the facts that Lombardo alleges — that Officers Pfancock and Steidel stopped Lombardo and initially detained him because Meinhart informed them that Lombardo had outstanding arrest warrants, and that Meinhart had told the officers that Lombardo previously assaulted her – do not support Lombardo's conclusions.

Despite the Court's explanation and directive in the June 12, 2024 Memorandum regarding the deficiencies in Lombardo's Amended Complaint, (*see* ECF No. 9 at 13-14), Lombardo's allegations in the SAC do not sufficiently describe the circumstances leading up to

the stop, search, and seizure to support an inference that the Defendants' actions were

unconstitutional.  *See also Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa.

May 12, 2023) ("To properly analyze a claim asserting an illegal search and seizure under the

Fourth Amendment, [the plaintiff] must plead the circumstances under which the search arose."

(citation omitted)), *aff'd sub nom. Medina v. Allentown Police Dep't*, No. 23-2055, 2023 WL

7381461 (3d Cir. Nov. 8, 2023).  While Lombardo clearly seeks to present claims based on

alleged violations of his Fourth Amendment rights in connection with this incident, he does not

include sufficient factual allegations about the stop and subsequent events to support an

inference that the Defendants' actions were unconstitutional.  Instead, despite being given

multiple chances to amend his complaint, he has presented allegations that are disjointed and

conclusory.  Accordingly, Lombardo's Fourth Amendment claims based on an alleged

unreasonable search and seizure by Officers Pfancock and Steidel will be dismissed.

### B.     Claims Based on Home Security Video

Lombardo alleges that Defendants Ballard and Scifers violated his constitutional rights

by recording him on video at their home without his knowledge.  (*See* SAC at 3, 7-8.)  "The

color of state law element is a threshold issue; there is no liability under § 1983 for those not

acting under color of law."  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

Whether a defendant is acting under color of state law — *i.e.,* whether the defendant is a state

actor — depends on whether there is "such a close nexus between the State and the challenged

action' that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko*

*v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that

question, [the Third Circuit has] outlined three broad tests generated by Supreme Court

jurisprudence to determine whether state action exists:  (1) whether the private entity has

exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Nothing in the SAC raises a plausible inference that there was "such a close nexus between the State and the challenged action[s]" to convert the actions of either Ballard or Scifers into state action for purposes of liability under § 1983.  Thus, any § 1983 claims against them must be dismissed.

Lombardo also lists the "Electronic Communications Privacy Act" and "18 U.S.C. § 2701" as the basis for claims against Defendants Ballard and Scifers.  (*See* SAC at 3.)  The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510 *et seq.*, and the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, are both inapposite to the case at bar.[6]  *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015) ("The federal Wiretap Act is codified at 18 U.S.C. § 2510 et seq.  A plaintiff pleads a prima facie case under the Act by showing that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device."); *id.* at 145-46 ("To state a claim under the Stored Communications Act, a plaintiff must show that the defendant '(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or

---

[6] Title I of the Electronic Communications Privacy Act is often referred to as the Wiretap Act. Title II of the Electronic Communications Privacy Act is known as the Stored Communications Act.

prevents authorized access to a wire or electronic communication while it is in electronic storage in such system.'" (citing 18 U.S.C. § 2701(a))).  Accordingly, all claims against Defendants Ballard and Scifers based on these statutes will be dismissed.

## C. **Conspiracy**

Lombardo once again claims that various Defendants conspired to violate his rights.  (*See* SAC at 3, 6-8.)  As the Court previously explained to Lombardo in the June 12, 2024 Memorandum, (*see* ECF No. 9 at 17-18), the elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'"  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).  "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[A] bare assertion of conspiracy will not suffice."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

As in the Amended Complaint, Lombardo fails to plausibly allege any facts in the SAC to support his conclusory assertions that a conspiracy or conspiracies existed, much less that any Defendants conspired to deprive him of his constitutional rights.  Lombardo simply has not alleged any factual basis from which a conspiracy could plausibly be inferred.  *See Mir v. Brod*, No. 22-3273, 2024 WL 1877024, at *1 (3d Cir. Apr. 30, 2024) (affirming dismissal of

conspiracy claim where plaintiff merely alleged conclusory allegations of "some sweeping conspiracy").  Accordingly, Lombardo's § 1983 conspiracy claim will be dismissed.

### D.     Other Claims

Lombardo once again references Due Process and Equal Protection.  (*See* SAC at 3.) Such passing references are not sufficient to raise claims under these principles.  *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).  In any event, the SAC does not provide any factual basis for a due process claim or an equal protection claim, so the Court will not discuss any such claims further.

Additionally, while Lombardo names Officer Yost as a Defendant, none of the facts alleged by Lombardo raise a plausible inference that Officer Yost violated his constitutional rights.  He merely claims that Officer Yost responded to a report by two homeowners regarding a break-in at their residence, and that he provided video to Officer Steidel in connection with an investigation.  (*See* SAC at 7-8.)  Accordingly, any claims against Officer Yost will be dismissed.

Similarly, Lombardo names Meinhart as a Defendant.  To the extent that he seeks to allege a § 1983 claim against her, Meinhart is not a state actor, as previously acknowledged by Lombardo.  (*See* Compl. at 8 ("At all relevant times all individuals with the exception of (Stephanie Meinhart) were acting under the color of law.").)  Accordingly, any constitutional claim against Meinhart fails.

**D.      State Law Claims**

To the extent Lombardo again seeks to assert claims such as assault, battery, or privacy

violations under state tort law, he has not pled an independent basis for the Court's jurisdiction

over those claims.[7]  As Lombardo was advised in this Court's June 12, 2024 Memorandum, (*see*

ECF No. 9 at 18-19), district courts may exercise jurisdiction over cases raising claims

exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. §

1332(a).  Section 1332(a) requires "'complete diversity between all plaintiffs and all

defendants,'" which means that "unless there is some other basis for jurisdiction, 'no plaintiff

[may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co.*, 800 F.3d at 104

(quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v.

Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen

of the state where he is domiciled, meaning the state where he is physically present and intends

to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile

of a prisoner before his imprisonment presumptively remains his domicile during his

imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  A plaintiff commencing

an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben.

Life Co.*, 800 F.3d at 105 ("The burden of establishing federal jurisdiction rests with the party

asserting its existence." (citing *DaimlerChrysler Corp.*, 547 U.S. at 342 n.3)).

Although he was given an opportunity to replead state law claims, Lombardo does not

plead the citizenship of any party to this suit, but provides Pennsylvania addresses for each.  (*See*

---

[7] Because the Court has dismissed Lombardo's federal claims, the Court will not exercise
supplemental jurisdiction over any state law claims.

SAC at 2.)  Since the SAC fails to allege a basis for diversity jurisdiction, any state law tort claims will be dismissed without prejudice for lack of jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the SAC.  Lombard's federal claims, including claims brought pursuant to § 1983, as well as other federal statutes, will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Any state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

Lombardo has had three opportunities to state a plausible claim.  The Court concludes that a further opportunity to amend would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story").  An appropriate Order follows, dismissing this case.

**BY THE COURT:**

**/s/ John Milton Younge**
**JOHN MILTON YOUNGE, J.**